

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LUIS ALMONTE, individually and as
Administrator of the Estate of Marcelo
Lucero a/k/a Oswaldo Lucero,

      Plaintiffs,

--against--

SUFFOLK COUNTY,
SUFFOLK COUNTY POLICE
DEPARTMENT, TOWN OF
BROOKHAVEN,
TOWN OF BROOKHAVEN
DEPARTMENT OF
PUBLIC SAFETY,
VILLAGE OF PATCHOGUE,
VILLAGE OF PATCHOGUE OFFICE OF
PUBLIC SAFETY AND CODE
ENFORCEMENT, UNKNOWN POLICE
OFFICERS 1-10
        Defendants.
-----------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ NOV 02 2011 ★

LONG ISLAND OFFICE

MEMORANDUM AND ORDER

10-CV-5398
(LDW)

APPEARANCES:

Law Offices of Frederick K. Brewington
By: Frederick K. Brewington, Esq.
    Guy William Germano, Esq.
556 Peninsula Boulevard
Hempstead, NY 11550
Attorneys for Plaintiff

Faga Savino LLP
By:   Kevin B. Faga, Esq.
Law Office of Richard St. Paul, Esq.
By:   Richard E, St. Paul, Esq.
399 Knollwood Road
Suite 301
White Plains, NY 10603
Attorneys for Plaintiffs

Goldberg Segalla LLP
By:    Brian W. McElhenny, Esq.
       Christopher M. Hart, Esq.
200 Old Country Road Suite 210
Mineola, NY 11501
Attorneys for Defendants Town of Brookhaven and Town of Brookhaven Department of Safety

Sokoloff Stern LLP
By:    Adam I. Kleinberg, Esq.
       Brian S. Sokoloff, Esq.
       Leo Dorfman, Esq.
355 Post Avenue Suite 201
Westbury, NY 11590
Attorneys for Defendants Village of Patchogue and
Village of Patchogue Office of Public Safety and Code Enforcement

WEXLER, District Judge:

       Plaintiff Luis Almonte brings this action both individually and in his capacity as the Administrator of the estate of Marcelo Lucero a/k/a Oswaldo Lucero ("Lucero" or "Plaintiff's Decedent"). Plaintiff asserts a civil rights claim pursuant to 42 U.S.C. §1983 ("Section 1983"), and state law claims of negligence. Plaintiffs' claims arise out of the death of Marcelo Lucero ("Lucero"), Plaintiff's decedent, who was attacked and killed while walking in the Village of Patchogue on the night of November 8, 2008. The individuals who attacked Lucero are not Defendants in this action. Here, Plaintiff names as Defendants: (1) the County of Suffolk, (2) the Suffolk County Police Department (collectively "County Defendants"), (3) the Town of Brookhaven, (4) the Town of Brookhaven Department of Public Safety (collectively the "Town Defendants"), (5) the Village of Patchogue, and (6) the Patchogue Office of Public Safety and Code Enforcement (collectively the "Village Defendants"). The only individual Defendants are unnamed "John Doe" defendants referred to as "Unknown Police Officers 1-10."

       Plaintiff's sole federal claim, that set forth pursuant to Section1983, is based upon the

alleged violation of Lucero's substantive due process liberty interest as secured by the Fourteenth Amendment to the United States Constitution. The state law claims sound in negligent hiring and training of police officers. Plaintiff seeks damages for the Section 1983 and negligence claims stemming from Lucero's conscious pain and suffering, medical expenses incurred prior to his death, and in the nature of wrongful death for loss of Lucero's income and services and for funeral and burial expenses.

Presently before the court are the motions of The Town and Village Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint. For the reasons that follow, those motions are granted.

## BACKGROUND

### I. The Allegations of the Complaint

The factual allegations set forth below are drawn from Plaintiffs' complaint, are presumed true and construed in the light most favorable to Plaintiff for the purpose of deciding these motions to dismiss.

Marcelo Lucero was an individual of Hispanic descent who immigrated to this country from Ecuador. On or about the evening of November 8, 2008, Lucero completed work and was walking in the vicinity of the intersection of Railroad Avenue and Stephen Street in the Village of Patchogue, which is located within the Town of Brookhaven. During that walk, Lucero was attacked by a group of white teenagers. The individuals attacking Lucero used racial slurs and began the attack by beating Lucero. The attack escalated and one of the individuals involved stabbed Lucero, who was left in the street to die.

3

Plaintiff alleges, and the court accepts as true for the purpose of this motion, that the group of teenagers who attacked Marcelo, had earlier that evening, or the day before the attack on Lucero (referred to in the complaint as November 7 or November 8, 2008), been stopped by "Defendants" for attacking a different Hispanic individual. The complaint does not state which of the named Defendants is alleged to have earlier have stopped and released Lucero's attackers. The court is therefore unable to state with certainty at this time, the Defendants to which such behavior is attributed. The court will accept, at this point, Plaintiff's factual allegation as to an earlier stop by law enforcement of Lucero's attackers. Plaintiff describes the earlier attack as having been reported to police by a person of Hispanic descent who told police that he was "assaulted with a BB gun and harassed with racial slurs by a group of white teenagers." It is alleged that "Defendants" encountered this group of teenagers and "released the said teenagers with their weapons to continue to terrorize and target people of Hispanic descent in the Defendants' communities." Plaintiff does not allege that any law enforcement officer or agent of any named Defendant was present at the time of the attack on Lucero. Nor is there any allegation that any Defendant knew that Lucero would be the target of an attack.

The complaint alleges that Defendants' "knowledge and indifference to the obvious racial tension between whites and Hispanics in the Patchogue area would lead to continued attacks on Hispanics and inevitably lead to serious injuries or deaths." In support of this broad allegation, the complaint relies on previous allegedly racially motivated incidents, as well as information set forth in two publications. Thus, in addition to the incident that is alleged to have occurred immediately before the attack on Lucero, the complaint sets forth allegations regarding racial

tension in the Suffolk County vicinity of the Lucero attack, which the complaint describes as "not new to racial tension between Whites and Hispanics."

In support of the allegations regarding a racially charged atmosphere, the complaint states, upon information and belief, that the Patchogue area first gained national attention in 2002 when two Mexican day laborers were abducted. It is further alleged that a few years after the day laborer incident, high school students burned down the house of a Latino family because of their Hispanic descent. The complaint also refers to an article published by the Southern Poverty Law Center (the "SPLC") and to a Long Island online blog, both of which refer to racial tension and anti-immigrant sentiment directed against Hispanic individuals, both in Suffolk County and throughout the country. The SPLC article charges that local Suffolk County politicians and law enforcement officials fueled this racial tension. In particular, an unnamed county legislator is quoted as saying that if he saw Latino workers gathering in his neighborhood, he would be "out with baseball bats." A second unnamed official is quoted as saying that he would respond to the presence of Latino workers by unloading his gun and "start shooting period." A third unnamed legislator is stated to have publicly warned undocumented residents that they had "better beware." The SPLC article concludes that Suffolk County is not unique in that other communities across the country are undergoing similar racial conflicts. It concludes with the recommendation that local politicians take certain enumerated measures to ease the tension, including training law enforcement officers to consider more seriously cases of hate-motivated crime, and the promotion of educational programs encouraging respect for diversity.

II.    Plaintiff's Claims and the Motions to Dismiss

As noted, Plaintiff sets forth a Section 1983 claim alleging the violation of Marcelo Lucero's due process liberty interest in his life. The state claims allege negligence in the hiring, retention and training of law enforcement officers.

The Town and Village Defendants (collectively hereinafter "Defendants") move to dismiss. Relying primarily on the seminal decision of the Supreme Court in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), Defendants seek dismissal of the Section 1983 claim on the ground that while there is a Constitutional right to the integrity of one's life, the Constitution imposes no duty on the part of public defendants to protect individuals from privately inflicted harm. Additionally, Defendants take issue with the naming of particular Defendants. The Village states that it does not have a police department and that the named "Office of Public Safety and Code Enforcement," is not a an entity that may be sued. The Town similarly points out that it does not maintain its own police department and that its Department of Public Safety is not an independent legal entity that may be sued. Thus, both the Village and the Town argue that neither had the ability nor the duty to protect the area in which the Lucero attack occurred. Dismissal of the state law negligence claims is also sought on these latter grounds, as well as on the grounds that Plaintiff failed to file timely notices of claim and the claims are, in any event, time barred.

## DISCUSSION

I. <u>Legal Principles</u>

    A. <u>Standards on Motions to Dismiss</u>

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true, and draw all reasonable inferences in favor of

6

plaintiffs. Bold Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard set forth in Conley v. Gibson, 355 U.S. 41 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 45-46. The Supreme Court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Although heightened factual pleading is not the new standard, Twombley holds that a "formulaic recitation of cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1959. Further, a pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, 129 S. Ct. at 1950.

B. Section 1983 Claim

Plaintiff claims that the Defendants violated Lucero's substantive due process right to be free from harm by failing to properly protect him from the group of individuals who attacked and killed him. The Substantive Due Process Clause of the Fourteenth Amendment has been interpreted to include an "individual's interest in bodily integrity." Chambers v. North Rockland Central School Dist., 2011 WL 4472179 * 1 (S.D.N.Y. 2011), quoting, Lombardi v. Whitman, 485 F.3d 73, 78–79 (2d Cir. 2007). That right, however, is intended to prevent the government "from abusing [its] power, or employing it as an instrument of oppression," DeShaney, 489 U.S. at 196, it does not speak to a general right to protection from private harm. Thus, the Supreme Court has held clearly that nothing in the Constitution requires the State "to protect the life,

7

liberty, and property of its citizens against invasion by private actors." Id. at 195 (emphasis added). Put simply, the purpose of the Due Process Clause was "to protect the people from the State, not to ensure that the State protected them from each other." Id. at 196.

The broad rule set forth in DeShaney is subject to two narrow exceptions. Specifically, a substantive due process claim arising out of private harm may be stated: (1) if the victim of private conduct was in a "special relationship," with the State or (2) if the state or its agents "in some way assisted in creating or increasing the danger to the victim." Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008). Even if one of these exceptions apply, a plaintiff faces the additional hurdle of showing that the defendant's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. at 155, quoting, County of Sacramento v. Lewis, 523 U.S. 833, 848 n. 8 (1998); Chambers, 2011 WL 4472179 *7.

The touchstone of the "special relationship" exception to the DeShaney rule is the requirement that the state has somehow placed the victim within its custody. The special relationship created by such custody includes imprisonment and involuntary institutionalization, but does not include non-custodial relationships such as that existing between a confidential informant and the government. See Matican, 524 F.3d at 156.

As to the second exception to DeShaney, referred to as the "state-created danger" exception, a plaintiff must show more than the State's general knowledge of a danger; he must show that the State assisted in "creating or increasing the danger that the victim faced at the hands of a third party." Id. at 157. The requirement of showing that the State has taken an active role in the deprivation of a right stems from the acknowledgment that due process is defined as a limitation on the acts of the State, and not as a guarantee of state action. Lombardi v. Whitman,

8

485 F.3d 73, 79 (2d Cir. 2007). Thus, while passive conduct does not therefore fall within the state-created danger exception, id., the Second Circuit has held that a claim is stated where the defendant's facilitation of a private attack amounts to affirmative conduct necessary to state a due process violation. Pena v. DePrisco, 432 F.3d 98, 109 (2d Cir. 2005).

Affirmative encouragement of particular violence was held to state a claim in Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993). There, the Second Circuit held that a due process claim was stated where police officers knew of, and failed to intercede to stop a violent attack. In Dwares, the plaintiff had been assaulted by "skinheads" while a participant in a political rally that involved the burning of an American flag. The defendant police officers witnessed the attack on the victim in Dwares. Additionally, there was evidence that the police were informed of the possibility of violence by skinheads, and told the attackers that they would not interfere with an attack on the flag burners. Dwares, 985 F.2d at 98. Such "prearranged official sanction of privately inflicted injury," was held to state a claim under the Due Process Clause. Id.

Critical to the holding in Dwares, and other cases where the state-created danger was held to apply, is the fact that an agent of the State, typically a law enforcement officer, was shown to have had a particular relationship with the perpetrator of the violence on the victim. Lombardi, 485 F.3d at 80. In Dwares, for example, the officers knew of the impending attack, knew where it would take place, encouraged it to take place, witnessed the attack and failed to intercede on behalf of the victim. Other state-created danger cases have been sustained on similar facts. See, e.g., Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998) (state-created danger held to exist where police officers returned gun to former police officer/crime victim, took gun owner along to arrest and allowed shooting).

9

II.     Disposition of the Motion

Because Lucero was not in State custody at the time of the attack, Plaintiff does not, and cannot allege the existence of a special relationship between Lucero and any State Defendant. He therefore can rely only on the state-created danger theory of due process liability to state a claim. The complaint, however, sets forth no such plausible claim.

As noted, the state created danger theory of liability requires a finding of affirmative conduct on the part of the Defendant, usually acting in direct concert with the perpetrator and witnessing the violence. Passive conduct, including speech aimed at the public which is spoken in general terms, is insufficient to state a claim for a substantive due process violation. Thus, even the court's acceptance as true the allegations of a pervasive air of racism, and the voicing of racist sentiment by certain County legislators, does not lead to the conclusion that there was a breach of a duty to protect Lucero on the night in question. Certainly, the attack was tragic and the statements of government officials if true, are racist and inexcusable. However, such facts do not give rise to the breach of a particular substantive due process duty owed to Lucero.

Instead, consistent with Supreme Court and Second Circuit precedent, a breach of duty could be plausibly alleged only if Plaintiff were able to show a relationship between particular Village and/or Town law enforcement officers and the perpetrators of the crime. Pena, 432 F.3d at 109 ("state created danger" liability arises from the relationship between the state and the private assailant). Here, such a relationship could not have existed between the criminals and the Village or Town Defendants. Both of these Defendants have shown that neither is responsible for policing the area of the attack. No Village or Town law enforcement officer could have therefore known about, encouraged, or witnessed the attack. General allegations as to a

10

sentiment of racism with in the Town or Village of some residents or officials, even if true, are insufficient to state a claim arising out of the particular attack on Lucero. Accordingly, no Section 1983 claim has been plausibly asserted against any Village or Town Defendant.

Perhaps in recognition of the weakness of Plaintiff's case in light of DeShaney, and its Second Circuit progeny, Plaintiff relies on cases decided outside of this circuit, on inapposite facts. Thus, in opposition to the motions, Plaintiff argues, in the most general of terms, that dismissal is improper because government officials may be held liable for conduct that "reflects a reckless or callous indifference" to the rights of an individual. Two of those cases were decided by the Tenth Circuit Court of Appeals and involved high speed car chases that resulted in bystander harm. See Ellis v.Ogden City, 589 F.3d 1099 (10th Cir. 2009); Medina v. City and County of Denver, 960 F.2d 1493 (10th Cir. 1992). In Ellis, the most recently decided of the two, the Tenth Circuit, held that in such cases there must be "evidence of a purpose to cause harm unrelated to the legitimate object of the arrest" to show the shocking conduct necessary to state a substantive due process violation. Ellis, 589 F.3d at 1102. Equally inapposite is the third case relied on by Plaintiff, Torres Ramirez v. Bermudez Garcia, 898 F2d. 224, 227 (1st Cir. 1990). There, the court held that Plaintiff's allegations with respect to the intentional processing of a warrant known to have been vacated could rise to the level required to show the arbitrary exercise of governmental power necessary to state a due process violation. Torres Ramirez, 989 F.2d at 227.

Unlike the cases relied upon by Plaintiff, this matter is governed directly by DeShaney and Second Circuit case law interpreting the state-created danger exception to the rule therein. Those cases refuse to impose liability based upon the allegation that the state failed to protect a

11

plaintiff from even a known danger of bodily harm. See Chambers, 2011 WL 4472179 *7. Instead, the exception is limited to facts showing a relationship between the criminal and the State. Id. Even construing the facts most favorably to Plaintiff shows no such relationship between any Town or Village Defendant and Lucero. There is no showing of any knowledge, witnessing, or participation in the attack against Lucero. In the absence of any such relationship, application of the law as set forth above, requires dismissal of all Section 1983 claims against the Village and the Town Defendants.

In view of dismissal of the sole federal claim alleged, the court declines to exercise jurisdiction of any state law claim alleged. See 28 U.S.C. §1367(c)(3). The complaint is therefore dismissed, in its entirely against the Village and Town Defendants.

## CONCLUSION

For the foregoing reasons, the court grants the motions of the Village and Town Defendants to dismiss the complaint. The Clerk of the Court is directed to terminate the motions appearing at docket entries 19 and 22 in this matter.

SO ORDERED.

> LEONARD D. WEXLER
> UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
   November 2 , 2011

12